**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **JACKIE REDMON and BAIL** | § | |
| **BONDSMAN FOR CHRIST,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **PE:19-CV-40-DC-DF** |
| | § | |
| **DARIN K. MITCHELL and** | § | |
| **WINKLER COUNTY, TEXAS,** | § | |
| *Defendants*. | § | |

### REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

TO THE HONORABLE DAVID COUNTS, UNITED STATES DISTRICT JUDGE:

BEFORE THE COURT is Defendants Sheriff Darin K. Mitchell (hereafter, "Sheriff Mitchell") and Winkler County, Texas's (hereafter, "Winkler County") (collectively, "Defendants") Motion for Summary Judgment. (Doc. 38). This case is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636, and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the motion and relevant law, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 38).

### I. BACKGROUND

Plaintiffs Jackie Redmon (hereafter, "Redmon"), Holy Spirit Oilfield Ministry of Kermit, Texas (hereafter, "the Church"), and Bail Bondsman for Christ (collectively, "Plaintiffs") filed this civil action on July 26, 2019, against Defendants and the Winkler County Appraisal Board pursuant to 42 U.S.C. §1983. (Doc. 1). Redmon is the founder of the Church and owner of Bail Bondsman for Christ. *Id*. Plaintiffs filed an Amended Complaint on September 30, 2019. (Doc. 6). Plaintiffs then filed a Second Amended Complaint with leave of Court on November 20, 2019. (Doc. 13). Plaintiffs' Second Amended Complaint is therefore the operative pleading before the Court.

Plaintiffs allege that on or about June 6, 2016, Redmon was called into Sheriff Mitchell's office and told to stop writing bail bonds. (Doc. 13 at 4). Thereafter, Plaintiffs allege that Sheriff Mitchell told Redmon that he had exceeded the limit for issuing bail bonds. *Id*. at 5. Plaintiffs assert that Sheriff Mitchell's rationale for confronting Redmon was that Sheriff Mitchell interpreted Article 17.11, § 2 of the Texas Code of Criminal Procedure to preclude Redmon from working as a bail bondsman due to Redmon's 1995 felony. *Id*. Further, Plaintiff contends that on a separate occasion, Sheriff Mitchell told Redmon that the new District Attorney said that Redmon "cannot write any more bonds because he [is] a convicted felon." *Id*. at 6.

On January 8, 2020, Defendants and the Winkler County Appraisal Board filed a Motion to Dismiss. (Doc. 20). The Winkler County Appraisal Board also filed a Supplemental Motion to Dismiss on January 30, 2020. (Doc. 24). On March 26, 2020, the undersigned recommended the following: Plaintiff Holy Spirit Oilfield Ministry of Kermit, Texas should be dismissed as a Plaintiff; Defendant Winkler County Appraisal Board should be dismissed as a Defendant; Plaintiff's claims for relief from taxation should be dismissed; and that Plaintiffs properly pled a constitutionally-protected property interest in the right to employment as a bail bondsman free of impediment. (Doc. 28). The District Court adopted the undersigned's Report and Recommendation on April 13, 2020. (Doc. 29).

On April 23, 2020, Defendants filed a second Motion to Dismiss, seeking dismissal of Plaintiffs' claims against Sheriff Mitchell. (Doc. 30). Defendants sought dismissal of Plaintiffs' claims against Sheriff Mitchell because the claims were purportedly brought against Sheriff Mitchell solely in his official capacity. *Id*. However, in a Report and Recommendation, the undersigned found Plaintiff had intended to sue Sheriff Mitchell in both his official capacity and individual capacity, and therefore recommended Defendants' second Motion to Dismiss be granted in part as to Plaintiffs' claims against Sheriff Mitchell in his official capacity but denied in part as to Plaintiffs' claims

2

against Sheriff Mitchell in his individual capacity. (Doc. 36). On June 24, 2020, the District Court adopted the undersigned's Report and Recommendation. (Doc. 37).

Plaintiffs' remaining claims against Defendants include the following: Bail Bondsman for Christ and Redmon have plead the violation of a constitutionally protected property interest in the right to employment as a bail bondman free of impediment against Defendants Winkler County and Sheriff Mitchell, in his individual capacity. (Doc. 38 at 3). On July 17, 2020, Defendants filed the present Motion for Summary Judgment seeking dismissal of Plaintiffs' remaining claims. *Id.* Plaintiffs filed a Response on August 25, 2020. (*See* Doc. 42). Defendants did not file a Reply.

On December 8, 2020, the Court was made aware—via Defendants' Motion to Stay—that Plaintiffs' counsel, Mr. Gerald Fugit, had died in late October 2020. (*See* Doc. 43). A hearing was held on Defendants' Motion to Stay on February 3, 2021, during which the undersigned stayed the case for sixty (60) days to allow Plaintiffs time to hire new counsel. (*See* Doc. 48). On March 23, 2021, the Court held another hearing due to Plaintiffs' failure to inform the Court about new counsel. (*See* Doc. 49). During the March 23 hearing, Plaintiffs informed the Court they had obtained new Counsel and requested a brief extension for the new counsel to make an appearance, which Defendants did not object to. (*See* Doc. 53). On April 26, 2021, Attorney Steve Hershberger filed an Appearance of Counsel on behalf of Plaintiffs in the instant suit. (Doc. 55).

On May 27, 2021, the Court provided Plaintiffs' new counsel with an opportunity to amend or supplement the existing Response to Defendants' Motion for Summary Judgment by filing either an addendum to the Existing Response or, alternatively, to file an entirely new Response to Defendants' Motion for Summary Judgment by June 7, 2021. (*See* Doc. 56). On June 7, 2021, Plaintiffs' new counsel filed a Response to the Motion for Summary Judgment. (Doc. 57). Plaintiffs' counsel failed to identify whether the filing was to be construed as an addendum or entirely new response, therefore, the undersigned will treat the new filing as an addendum to the extent it does not

conflict with the previously filed Response. On June 14, 2021, Defendants filed a Reply. Accordingly, this matter is ready for disposition.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *United States v. Renda*, 709 F.3d 472, 478 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the nonmoving party to point to "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Additionally, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original) (quoting *Anderson*, 477 U.S. at 247–48). "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Duron v. Albertson's, LLC*, 560 F.3d 288, 291 (5th Cir. 2009) (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 199 (5th Cir. 1999)).

In reviewing the record, "the court must draw all reasonable inferences in favor of the nonmoving party and it may not make credibility determinations or weigh the evidence." *Reeves v.*

*Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). However, the court may not "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the nonmovant. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.*

### III. DISCUSSION

Defendants urge the Court to dismiss Plaintiffs' claims for the following three reasons: (1) Plaintiffs are barred from signing as bail bond sureties in Texas and have been since 2003; (2) Winkler County has committed no constitutional violation; and (3) Sheriff Mitchell is entitled to qualified immunity. (*See* Doc. 38). Prior to delving into the merits of Defendants' arguments, it is imperative to establish the parameters of Plaintiffs' claims. As noted above, the only remaining claims at issue in the present Motion for Summary Judgment center on whether Defendants violated Plaintiffs' constitutional rights by infringing on Plaintiffs' ability to write bail bonds. Plaintiffs begin their Second Amended Complaint by arguing that on June 6, 2016, Sheriff Mitchell informed Redmon he would no longer be able to write bail bonds in Winkler County due to Plaintiff's 1995 felony conviction. (Doc. 13 at 4).

Next, Plaintiffs assert that at some point after June 6, 2016, Sheriff Mitchell told Redmon he was "over the limit of making [bail] bonds" and that Redmon could "not continue to make bonds in Winkler County." *Id.* at 5. While Plaintiffs characterize Sheriff Mitchell's declaration on bail bond "limits" as an arbitrary distinction unsupported by law, Redmon states in his affidavit attached to the

Second Amended Complaint that he had "too many [judgment *nisi*][1] failure to appears." *Compare* Doc. 13 at 5 *with* Doc. 13-8 at 3. In the undersigned's opinion, this indicates that the "limit" referred to by Sheriff Mitchell was in all-likelihood a reference to the several outstanding default judgments against Redmon, individually, and Plaintiffs, collectively, for failing to have bonded defendants appear in court. *See id*. In Redmon's second affidavit, attached to the Original Response to the Motion for Summary Judgment, Redmon himself seems to corroborate this line of reasoning wherein he notes "[i]n or around June of 2019, Sheriff Mitchell suspended me from writing bail bonds in Winkler County because of the judgment *nisis*." (Doc. 42-1 at 3).

Finally, Plaintiffs again contend Sheriff Mitchell told Redmon—this time on the advice of the "new District Attorney"—that Redmon could not write bonds in Winkler County due to Redmon's 1995 felony conviction. (Doc. 13 at 6). While this may seem to be a separate prohibition on writing bonds, Redmon characterizes this interaction as a threat in his Second Affidavit, rather than an affirmative action taken by Sheriff Mitchell. (*See* Doc. 42-1 at 2). Therefore, based on the foregoing, the undersigned finds Plaintiffs' claims are comprised of two instances where Sheriff Mitchell forbade Plaintiffs from writing bail bonds: once due to Redmon's 1995 felony conviction and once due to Plaintiffs' unpaid judgment *nisis*. Having established Plaintiffs' claims, the undersigned will proceed with analyzing Defendants' Motion for Summary Judgment.

## 1. Redmon Could Not Have Legally Been a Surety While He Was in Default

Defendants begin by arguing the Texas Code of Criminal Procedure expressly prohibits any surety who has signed on a bail bond and is in default thereon to sign as a surety on any other bond so long as the person is in default on the bond. (Doc. 38 at 5) (citing Tex. Code Crim. Proc. Ann. art. 17.11 § 2). Further, the Office of the Attorney General of Texas has construed Article 17.11, § 2 as disqualifying "a surety who is in default on a bail bond from signing as a surety during the period of

---

[1]. *See State v. Sellers*, 790 S.W.2d 316, 321 (Tex.Crim.App.1990) (en banc) ("In effect a judgment *nisi* serves as documentary evidence of a fact the State must prove to obtain a favorable judgment in a bond forfeiture case . . . that the principal did in fact fail to appear in accordance with his bond.").

default anywhere in the state and, in effect, requires any sheriff to refuse to accept a bond from such a surety." 2011 Tex. Att'y Gen. Op. GA-0903 at 3–4.

Between 2003 and 2019, Redmon defaulted on three, separate bonds. (*See* Doc. 38 at 5–7). On July 24, 2003, Redmon—under the assumed name Aardvark Bail Bonding—was found to be in default as surety by the Dallas County Criminal Court. (*See* Docs. 38-2, 38-3). As an aside, in Texas "it is well settled that an assumed name is not a legal entity and that the holder of an assumed name is liable personally for the assumed name's debts, judgments, or other liabilities." *Eckman v. Northgate Terrace Apartments, LLC*, No. 03-18-00254-CV, 2018 WL 3150845, at *2 (Tex. App. June 28, 2018) (citing Tex. R. Civ. P. 28). Next, on May 19, 2017, Plaintiffs "defaulted as sureties on a bail bond in Scire Facias No. 185,025-A styled *The State of Texas v. Toby Jean Ohlemacher and Jackie Redmon d/b/a Bail Bonds for Christ* and filed in the 30th District Court of Wichita County, Texas." (Doc. 38 at 6) (citing Doc. 38-5). Finally, on October 23, 2019, Plaintiffs defaulted "as sureties on a bail bond in Civil Cause No. DC19-17657, Criminal Cause No. DC19-5825, styled *The State of Texas v. Ruben Contreras, Principal, Jackie Redmon d/b/a Bail Bonds for Christ, Surety*, and filed in the Winkler County Court at Law of Winkler County, Texas." (Doc. 38 at 7) (citing Doc. 38-5). In response, Plaintiffs assert that each of the defaults previously described were cured. (*See* Doc. 42). Plaintiffs contend the 2003 default was paid in 2003, the 2017 default was cured in 2020, and finally, the 2019 default was cured in 2020. (*See* Docs. 38 at 5; 42 at 6).

Viewing the evidence in the light most favorable to Plaintiffs, Redmon was in default from 2017 until 2020. Therefore, pursuant to Tex. Code Crim. Proc. Ann. art. 17.11 § 2, Redmon was disqualified from signing as a surety on a bond during that three-year period. As noted above, one of Plaintiffs' two claims centers on Sheriff Mitchell disallowing Redmon from writing bail bonds due to Redmon's unpaid judgment *nisis*. (Doc. 42-1 at 3). While June 6, 2016 is the sole date Plaintiffs rely

on throughout their pleadings,[2] Redmon testified via affidavit attached to Plaintiffs' Response to
Defendants' Motion for Summary Judgment that "[i]n or around June of 2019, Sheriff Mitchell
suspended [Redmon] from writing bail bonds in Winkler County because of the judgment *nisis*."
(Doc. 42-1 at 3). This date coincides with Sheriff Mitchell's own testimony that he forbade Redmon
from issuing bail bonds for the unpaid judgment *nisis* in "June 2019 and again around October or
November of 2019." (*See* Doc. 38-1 at 2). Resolving all factual ambiguities in favor of Plaintiffs, it is
clear to the undersigned that Redmon's suspension premised on judgment *nisis* occurred in 2019. *See*
*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). As Redmon was in statutory default from
2017 until 2020, this suspension was within the parameters of Tex. Code Crim. Proc. Ann. art. 17.11
§ 2 and was therefore legal and Redmon's suspension premised on his unpaid judgment *nisis* was not
a constitutional violation. Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion
for Summary Judgment be **GRANTED** insofar as it seeks summary judgment against Plaintiff's
claims premised on Plaintiffs' unpaid judgment *nisis*. (Doc. 38).

### 2. Winkler County Constitutional Violations

Defendants additionally contend Plaintiffs have failed to establish municipal liability for
Winkler County. (Doc. 38 at 7–13). Municipalities may not be sued for injuries inflicted solely by
their employees. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978).
However, the Fifth Circuit has "previously determined that holding a Texas county liable for the
actions of its sheriff 'does not run afoul of *Monell's* admonition against *respondeat superior* liability
on the part of the county for the actions of its employees.'" *Vera v. Tue*, 73 F.3d 604, 609 (5th Cir.
1996) (citing *Turner v. Upton County*, 915 F.2d 133, 137 (5th Cir. 1990), *cert. denied*, 498 U.S. 1069
(1991)). In *Turner*, the Fifth Circuit reasoned "that the Sheriff, an elected county official, had equal

---

2. In Redmon's affidavit attached to Plaintiffs' Response to the present Motion for Summary Judgment, Redmon
state the events took place in June 2018. (*See* Doc. 42-1 at 1). However, the undersigned interprets this as nothing
more than a typographical error. *See Detgen ex rel. Detgen v. Janek*, 945 F. Supp. 2d 746, 750 n.1 (N.D. Tex. 2013),
aff'd, 752 F.3d 627 (5th Cir. 2014) (interpreting conflicting dates as typographical errors).

authority to the county commissioners in that jurisdiction and that his actions constituted those of the county just as much as those of the commissioners." *Vera*, 73 F.3d at 609 (citing 915 F.2d at 137). Therefore, holding Winkler County liable for Sheriff Mitchell's actions is permissible per Fifth Circuit caselaw. "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. Cty of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. Cty of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

As detailed above, Plaintiffs complain of: (1) a temporary suspension based on Redmon's prior felony; and (2) a temporary suspension premised on Redmon's nonpayment of several outstanding judgment *nisis*. *Id*. As an initial matter, Sheriff Mitchell is the official policy maker for Winkler County. *See Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990) ("[I]t has long been recognized that, in Texas, the county Sheriff is the county's final policy maker in the area of law enforcement[.]"). Further, it is undisputed that Sheriff Mitchell was personally involved in each of Redmon's suspensions, thereby making these actions official policy. Regarding Plaintiffs' claim for municipal liability premised on Redmon's suspension for his 1995 felony, the undersigned finds Plaintiffs have stated a constitutional violation whose moving force was Sheriff Mitchell's policy.

In Texas, as has been mentioned *ad nauseum* throughout this Report and Recommendation, bail bondsmen have a vested property interest in bail bonding. *See Vera*, 73 F.3d at 608. In the instant suit, the competent summary judgment evidence indicates Sheriff Mitchell prevented Redmon from exercising that vested property interest. Therefore, the undersigned finds a fact issue which precludes summary judgment in Defendants' favor. Accordingly, the undersigned **RECOMMENDS** Defendants' Motion for Summary Judgment be **DENIED** insofar as it seeks summary judgment on Plaintiffs' municipal liability claim against Winkler County for Redmon's suspension from bail bonding premised on Redmon's 1995 felony. (Doc. 38). However, as previously elaborated upon,

insofar as Plaintiffs seek municipal liability for Winkler County premised on Redmon's suspension due to Redmon's unpaid judgment *nisis*, the undersigned finds no constitutional violation. Therefore, the undersigned additionally **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED** insofar as it seeks summary judgment on Plaintiffs' municipal liability claim against Winkler County for Redmon's suspension from bail bonding premised on Redmon's unpaid judgment *nisis*. (Doc. 38).

### 3.   Qualified Immunity for Sheriff Mitchell

Finally, Defendants contend Sheriff Mitchell is entitled to Qualified Immunity against Plaintiffs' claims. (Doc. 38 at 13). Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In assessing qualified immunity, courts conduct a bifurcated analysis. *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004). The basic steps of the qualified-immunity inquiry are well-established: a plaintiff seeking to defeat qualified immunity must show that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1001 (W.D. Tex. 2019) (citing *Lincoln v. Turner*, 874 F.3d 833, 848 (5th Cir. 2017)). "This inquiry 'does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. (citing *Lincoln*, 874 F.3d at 848). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated" the plaintiff's asserted constitutional or federal statutory right.  *Thompson*, 245 F.3d at 457 (internal citations omitted) (emphasis in original).

Upon a defendant's assertion of qualified immunity, "the burden shifts to the plaintiffs to show that the individual defendants are not entitled to qualified immunity." *Reyes v. North Texas Tollway Authority*, 830 F. Supp. 2d 194, 210 (N.D. Tex. 2011) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)). "When summary judgment is sought on a qualified immunity defense, the court inquires whether the party opposing the motion has raised any triable issue barring summary adjudication." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). However, as stated above, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Brosseau v. Haugen*, 543 U.S. 194, 195, n.2 (2004)).

Sheriff Mitchell's actions undoubtedly violated Plaintiffs' constitutional rights. The Fifth Circuit has held that the right to earn a living by writing bail bonds is a property interest protected by the Texas Constitution since 1996. *See Vera v. Tue*, 73 F.3d 604, 608 (5th Cir. 1996). Therefore, the undersigned proceeds to the second prong of qualified immunity, assessing whether Plaintiffs' rights were clearly established at the time of the alleged incidents. As the undersigned has previously found no constitutional violation for Sheriff Mitchell's suspension of Redmon's bail bonding privileges due to Redmon's unpaid judgment *nisis*, the undersigned will only evaluate whether Sheriff Mitchell is entitled to qualified immunity for Redmon's temporary suspension from bail bonding based on Redmon's 1995 felony conviction.

Texas Code of Criminal Procedure Article 17.10(c)(2) was enacted in 2011 and provides in relevant part that a "person, for compensation, may not act as a surety on a bail bond if the person has been finally convicted of . . . a felony." Allegedly relying on this statute, Sheriff Mitchell prohibited Redmon from issuing bail bonds sometime in 2016. (*Compare* Doc. 13 at 4 *with* Doc. 38-1 at 1). Plaintiff asserts that at the time of this suspension, he informed Sheriff Mitchell of the limited application of Article 17.10(c)(2) to felons who committed felonies *after* the statute's enactment. (*See* Doc. 13 at 4–5). Upon review of Article 17.10(c)(2)'s legislative history, Sheriff Mitchell

discovered the statute was not intended to apply to felons who committed felonies prior to the statute's enactment and ended Redmon's suspension mere days after initiating it. (Doc. 38-1 at 1; *see also Authority of Certain Persons to Execute Bail Bonds and Act as Sureties*, 2011 Tex. Sess. Law Serv. Ch. 769 (H.B. 1823) (VERNON'S)). Defendants argue that Sheriff Winkler did not commit a constitutional violation and that moreover, even if he did, the violation was *de minimis*.

The undersigned disagrees with Defendants' argument that Sheriff Winkler did not commit a constitutional violation. As has been restated throughout this Report and Recommendation, Redmon's right to write and issue bail bonds is a property interest protected by the Texas Constitution. *See Vera*, 73 F.3d at 608. Therefore, Sheriff Mitchell's prohibition on Redmon writing bail bonds was a deprivation of a constitutionally protected right. Defendants alternatively argue Sheriff Mitchell's deprivation was *de minimis*, and therefore insufficient to establish a constitutional violation. (Doc. 38 at 10). The undersigned also finds Defendants' *de minimis* argument unavailing as case law regarding *de minimis* violations of constitutional rights conspicuously fail to address *de minimis* deprivations of protected property interests. However, despite the failure of Defendants' particular lines of reasoning in favor of qualified immunity, the undersigned nonetheless finds Sheriff Mitchell is entitled to qualified immunity against Plaintiffs' felony conviction suspension claim.

In holding that the right to employment as a bail bondsman is a protected property interest, the Fifth Circuit highlighted the Texas Supreme Court's decision in *Smith v. Decker*, wherein the Texas Supreme Court held that the vested property right of bail bonding was "subject only to valid and subsisting regulatory statutes." *Vera*, 73 F.3d at 607 –08 (quoting 158 Tex. 416 (1958)). This line of reasoning is supported by the U.S. Supreme Court which has held that property interests are created not by the Constitution, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). In the instant case, Sheriff Mitchell interpreted the 2011 addition of Article 17.10(c)(2) as modifying the bail bonding property right established by the

12

Texas Constitution. In reviewing the plain language of Article 17.10(c)(2), the undersigned finds Sheriff Mitchell's interpretation thereof was entirely reasonable as the statute is wholly unambiguous. The Fifth Circuit has held that where the language of a statute is unambiguous, courts need not and should not defer to extrinsic aids or legislative history. *See Guilzon v. C.I.R.*, 985 F.2d 819, 823 n.11 (5th Cir. 1993) (citing *Swearingen v. Owens–Corning Fiberglas Corp.*, 968 F.2d 559, 562 (5th Cir. 1992)). Therefore, the undersigned finds Sheriff Mitchell's interpretation of Article 17.10(c)(2) to be reasonable and finds no violation of a clearly established right, which entitles Sheriff Mitchell to qualified immunity as against Plaintiffs' claims regarding Redmon's prior felony suspension. Accordingly, the undersigned **RECOMMENDS** Defendants' Motion for Summary Judgment be **GRANTED** insofar as it seeks qualified immunity for Sheriff Mitchell against Redmon's claim for suspension from bail bonding premised on Redmon's 1995 felony. (Doc. 38). The undersigned's recommendation to grant Sheriff Mitchell qualified immunity does not affect the recommendation to deny Defendants' Motion for Summary Judgment regarding municipal liability for Winkler County. *See Craddock v. Hicks*, 314 F. Supp. 2d 648, 652 (N.D. Miss. 2003) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993)) ("Unlike government officials sued in their individual capacities, municipal entities and local governing bodies may not claim qualified immunity under § 1983.").

**4.  Due Process Claim Raised in Plaintiffs' Response to Motion for Summary Judgment**

In Plaintiffs' supplemental response to Defendants' Motion for Summary Judgment, Plaintiffs raise, for the first time, a procedural due process claim against Defendants. (Doc. 57 at 4). The Fifth Circuit has established two, different approaches for dealing with claims asserted for the first time in Response to a Motion for Summary Judgment:

> We have previously addressed the issue of new claims raised for the first time in response to a motion for summary judgment. We have taken two different approaches. The first approach states that a "claim which is not raised in the complaint but, rather, is raised only in

> response to a motion for summary judgment is not properly before the
> court." The second approach instructs the district court to treat a new
> claim raised in response to a motion for summary judgment as a
> request for leave to amend. The district court must then determine
> whether leave should be granted.

*Douglas v. Wells Fargo Bank, N.A.*, 992 F.3d 367, 373 (5th Cir. 2021) (internal citations omitted).

Here, considering this case has been pending for nearly two years, the undersigned chooses to take

the first approach enumerated by the Fifth Circuit and will not consider this claim because it is not

properly before the Court. *See Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113

(5th Cir. 2005).

## IV. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Defendants' Motion for

Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 38).

SIGNED this 16th day of June, 2021.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

14

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).